<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JESSICA R.,** | |
| *Plaintiff,* | |
| **v.** | **Civil Action No. 22-cv-06962** |
| **COMMISSIONER OF SOCIAL SECURITY,** | **OPINION** |
| *Defendant.* | |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff Jessica R.'s ("Plaintiff") request for review of Administrative Law Judge ("ALJ") Donna A. Krappa's decision regarding Plaintiff's application for Supplemental Security Income ("SSI") Benefits, pursuant to 42 U.S.C. §§ 1383(c)(3), 423, and 405(g). For the reasons set forth in this Opinion, the Commissioner of Social Security's (the "Commissioner") decision is **AFFIRMED.**

I.    STANDARD OF REVIEW AND APPLICABLE LAW

   A.  **Standard of Review**

   This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Commissioner's application of law is subject to plenary review, but factual findings must be affirmed if they are supported by substantial evidence. Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Stated differently, substantial evidence consists of "more than

1

a mere scintilla of evidence but may be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review: It prohibits this court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (quoting Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001)).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the Plaintiff and corroborated by family and neighbors; and (4) the Plaintiff's educational background, work history, and present age." Holley v. Colvin, 975 F. Supp. 2d 467, 475 (D.N.J. 2013), aff'd 590 F. Appx. 167 (3d Cir. 2014).

The ALJ must explain their reasoning such that the final determination is amenable to meaningful review. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119 (3d Cir. 2000). The Third Circuit has held, however, that an ALJ need not use particular language or adhere to a particular format when conducting their analysis, as long as there is "sufficient development of the record and explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).

**B. The Five-Step Disability Test**

Under the Social Security Act ("the Act"), disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1). To determine whether a claimant is disabled under the Act, the Commissioner applies a five-step test. 20 C.F.R. § 416.920.

First, the Commissioner must determine whether the claimant is currently engaging in "substantial gainful activity." Id. "Substantial gainful activity" is work activity involving physical or mental activities that are "usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972. If the claimant is engaged in substantial gainful activity, then they are not disabled and the inquiry ends. Jones, 364 F.3d at 503. Alternatively, if the Commissioner determines that the claimant is not engaged in substantial gainful activity, then the analysis proceeds to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 416.905(a). The regulations provide that a severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends, and benefits must be denied. See id.

At the third step, the Commissioner must determine whether there is sufficient evidence to demonstrate that the claimant suffers from a cross-referenced impairment. 20 C.F.R. § 416.920(d). If so, a disability is conclusively established, and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner, at step four, must decide if the claimant has the "residual functional capacity" ("RFC") to perform his past relevant work. 20 C.F.R. §416.920(e). If so, then the claim for benefits must be denied. 20 C.F.R. § 416.960(b)(3).

At the fifth step, if the claimant is unable to engage in past relevant work, the Commissioner must ask whether "work exists in significant numbers in the national economy that [the claimant] can do given [her] residual functional capacity and vocational factors." 20 C.F.R. § 416.960(c). The claimant bears the burden of establishing steps one through four. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The burden of proof shifts to the Commissioner at step five. Id.

## II.    BACKGROUND

### A.    Procedural History

Plaintiff initially filed for SSI on August 14, 2018. Administrative Transcript ("Tr.") at 371, ECF No. 8. Her claims were denied in the first instance and upon reconsideration. Id. 181–85, 189–91.

Plaintiff then requested an ALJ hearing, which occurred on June 17, 2020, before ALJ Donna A. Krappa. Id. 90–117, 192–93. In August 2020, the ALJ denied Plaintiff's claims. Id. 151–67. Plaintiff appealed this decision and requested another review, which the Appeals Council granted on April 23, 2021. Id. 174–80. On remand, the ALJ held a second hearing at which both Plaintiff and an impartial vocational expert appeared and testified. Plaintiff was represented by counsel at this hearing. See id. 61–89. Following the hearing on remand the ALJ again denied Plaintiff's claims. Id. 20. The Appeals Council denied Plaintiff's second appeal. Id. 1–7. This matter followed.

### B.    Relevant Background & Medical History

Plaintiff was born on April 8, 1979. Id. 40. She alleges that the onset date of her disability was December 31, 2016; she was last insured on September 30, 2019. Id. 24, 26. Plaintiff completed a high school education and has past work experience as an administrative clerk, a cashier, and a cook's helper. Id. 38–39.

i. *Interstitial Cystitis*

Starting in 2017, Plaintiff saw Nurse Practitioner Melissa Phillips ("N.P. Phillips") for symptoms relating to interstitial cystitis ("IC"), including urinary frequency and female pelvic pain. Id. 632–635. N.P. Phillips treated Plaintiff. Id. Plaintiff reported that she sometimes has a strong need to urinate with "little or no warning" and reported urinating every 1–2 hours in the daytime and getting up 1–2 times at night. Id. Plaintiff underwent a bladder instillation that was largely unsuccessful. See id. 632–39. Plaintiff's problems concerning her IC persisted with varying degrees of severity. See id.

In January 2018, Dr. Michael Ingber, M.D., evaluated Plaintiff for IC and a urinary tract infection. Id. 640. Plaintiff experienced worsening IC symptoms and, in May, was treated in the emergency room for hip swelling and severe pelvic pain. Id. 577–597. Plaintiff was diagnosed with a hip strain, prescribed methocarbamol, and was advised to follow up with an orthopedist. Id.; see also id. 640–43. In September, Plaintiff experienced additional IC flare-ups and, in November, underwent a cystoscopy procedure with hydrodistention and bladder instillation. Id. 617–25.

In May 2018, Plaintiff visited an orthopedist, Dr. Robert C. Petrucelli, M.D., concerning her hip pain in 2018. Id. 604–07. Plaintiff's MRI of her left hip showed cystic change of the superior anterior acetabulum with early spurring and stress edema in the anterior column as well as peristeal edema and cortical thickening in her hip. Id.

ii. *Fibromyalgia*

On a parallel path, Plaintiff sought care from her primary care physician Dr. Krithika Mullengada, M.D. to help control her fibromyalgia, among other conditions. Throughout the insured period, Plaintiff's fibromyalgia symptoms sporadically increased and decreased. For

5

example, in August 2018, Plaintiff reported her fibromyalgia was "much better," but she still had joint pain in her elbows, hands, knees, and feet.  She also reported moderate stiffness and fatigue. Id. 665–66.  But the record also indicates that in June 2019, Plaintiff's fibromyalgia was "acting up" and causing severe pain in her neck, elbows, hands, knees, and ankles.  Id. 845.  Dr. Mullengada continued to prescribe Plaintiff with Cymbalta throughout the insured period.

Eventually, Plaintiff's fibromyalgia symptoms appeared to subside.  In July 2019, Plaintiff told Dr. Mullengada that her fibromyalgia was stable, her anxiety improved overall, and her chest pain had been resolved.  Id. 840.  In mid-August 2019, Plaintiff returned to Dr. Mullengada, reporting that her fibromyalgia was at baseline and that she was tolerating Cymbalta well.  Id. While Plaintiff reported generalized pain in her hands, elbows, and knees, she denied joint stiffness or fatigue.  Id.  The doctor's examination showed normal sensation, strength, and gait and intact reflexes.  Id.

### iii.    Mental Health Diagnoses

In January 2019, Plaintiff underwent a consultative psychiatric evaluation with Dr. Jane Esposito, Psy. D., where Plaintiff was diagnosed with unspecified depressive disorder and generalized anxiety disorder.  Id. 670–72.  Dr. Esposito noted that Plaintiff walks slowly and her hands noticeably shake.  Id.  The following month, Plaintiff saw Dr. Richard Tonzola, M.D. for a neurological evaluation.  Dr. Tonzola noted that Plaintiff was alert with normal intellect, had a slightly depressed mood, normal cranial nerves, normal limb strength, normal sensation, and a slight limp due to left hip pain.  Id. 673.

### iv.    Assessment of Plaintiff's Limitations

Dr. Mullengada formally assessed Plaintiff's limitations in two instances.  First, in September 2018, Dr. Mullengada completed a Medical Opinion Form.  Dr. Mullengada indicated

that she first evaluated Plaintiff in 2011 and had evaluated her during multiple visits in 2018.  Id. 617–18.    Dr. Mullengada diagnosed Plaintiff with chronic left hip pain, osteoarthritis, fibromyalgia, tendinosis, IC, and an overactive bladder.  Id.  Dr. Mullengada indicated that Plaintiff was limited when standing and walking to less than 2 hours per day, and only 20 minutes at one time.  Id.  In addition, Dr. Mullengada also noted that Plaintiff was limited to less than six hours of sitting per day and needed to get up every 20 minutes due to pain in her left hip and buttocks.  Id.  In January 2020, Dr. Mullengada completed the second Medical Opinion Form where she indicated that in an eight-hour day, Plaintiff could stand and walk for less than 30 minutes.  Id. 703–06.  Dr. Mullengada also indicated that Plaintiff can sit for less than 2 hours due to lower back stiffness and pain, needing to change positions or lay down periodically.  Id.

Nancy Simpkins, M.D, a state agency physician, also opined on Plaintiff's limitations.  On November 26, 2018, Dr. Simpkins, M.D. reviewed Plaintiff's medical record and opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about four hours and sit for about six hours in an eight-hour day; and occasionally perform postural activities such as climbing stairs and bending.  Id. 127, 130.  On May 13, 2019, state agency physician Jacques Gulekjian, M.D., reviewed the record and agreed with Dr. Simpkins's determinations.  Id. 145–46.

Finally, Plaintiff evaluated her own limitations in two "Function Reports" dated September 2018 and March 2019.  See id. 429, 467.  Plaintiff indicated some difficulty with dressing, bathing, and shaving, and that she wakes up two to three times per night due to joint pain and an overactive bladder.  Id. 430.  Plaintiff stated that she is able to drive, go out alone for a quick errand, and shop for light items.  Id. 432, 470.  However, Plaintiff also indicated that she experiences unpredictable leakage from bladder and bowel problems, and that she wears incontinence pads and has to shower

and change her clothes "often or unpredictably" due to accidents. Id. 468. At home, she also

makes simple meals, cleans with her family, and completes one chore a day if her pain allows. Id.

431, 469.

<em>v.    Testimony from the ALJ Hearings</em>

At the 2020 and 2021 hearings, Plaintiff testified about her condition. See generally id. 63–

117. She noted the following conditions: chronic fatigue, an overactive bladder, IC, IBS,

fibromyalgia, disc degeneration, and possible osteoarthritis. Id. 69, 75, 97–98. Regarding her IBS,

Plaintiff testified that she uses the bathroom once every one-and-a-half to two-and-a-half hours

and is usually near the bathroom at home. Id. 75–76. However, Plaintiff stated that she has

accidents when she is out in public and cannot find a bathroom. Id. 76. In those instances, Plaintiff

wears incontinence pads. Id. Regarding her chronic pain, Plaintiff explained that she needs to

take a break every 20–30 minutes from standing, sitting, or walking, and that she cannot lift more

than 10 pounds. Id. 76–77, 102.

At the 2021 hearing, a vocational expert named Edmond Calandra also opined on Plaintiff's

condition. The ALJ presented Mr. Calandra with hypotheticals for an individual who has several

physical limitations. Id. 83–84. The expert responded that for jobs with limited physical activity,

occasional change in work setting throughout the day, and ready access to the restroom, there are

(1) light jobs, including electrical assembler, solderer, and small parts assembler; and (2) sedentary

jobs, including those of call center operator, credit card clerk, and waxer, polisher. Id. 84. Mr.

Calandra also testified that taking a five or six-minute break every hour for the restroom would

still allow an employee to work competitively. Id. 85.

C. **The ALJ's Decision**

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity between December 31, 2016, Plaintiff's alleged onset date, and September 30, 2019, her date last insured. Id. 26.

At Steps Two and Three, the ALJ found the following severe impairments: (1) left hip strain; (2) IC; (3) IBS; (4) Obesity; (5) Anxiety; and (6) Depression. However, the ALJ found that none of these impairments met or medically equaled one of the listed impairments in 20 C.F.R. Part 404. See id. 26–29.

In terms of the RFC Determination, the ALJ found that Plaintiff retained the RFC to "perform light work except that she could only stand or walk for four hours per an eight hour work day, could perform unlimited pushing and pulling within the weight restriction given, can never use ladders, ropes, or scaffolds; occasionally use ramps or stairs; occasionally balance, stoop, kneel, and crawl; never crouch; perform jobs that are simple and repetitive and require only an occasional change in work setting during the workday; and must have a job that permits ready access to a restroom." Id. 29.

At Steps Four and Five, the ALJ found that while Plaintiff could not perform past relevant work, the testimony of a vocational expert supported that Plaintiff could perform other work such as an electrical assembler, solderer, small parts assembler, call-center person, credit card clerk or a waxer or polisher. Id. 39–40. Thus, the ALJ concluded that Plaintiff was not disabled during the insured period. Id. 40.

III.   ANALYSIS

In challenging the ALJ's decision, Plaintiff raises four main arguments: (1) her RFC was not correctly determined; (2) fibromyalgia was incorrectly assessed; (3) Dr. Mullengada's

determinations were not properly considered; and (4) the ALJ did not properly consider Plaintiff's

combination of impairments.  The Court disagrees and will address each in turn.

### A. RFC Determination

First, Plaintiff argues that the ALJ did not properly assess Plaintiff's RFC, specifically

because the ALJ did not account for "time off task in addition to scheduled breaks for frequently

using the restroom or for urgent need of the restroom with no advance notice."  Pl.'s Br. at 17–18,

ECF No. 5.  The Court disagrees.

The RFC assessment reflects the most a claimant can still do despite their limitations and

is based on all the relevant evidence in the claimant's case record.  20 C.F.R. § 404.1545(a)(1)–

(3).  Here, the ALJ sufficiently noted Plaintiff's conditions of IC and IBS and determined that,

based on the record and testimony presented, Plaintiff could obtain a job that allows ready restroom

access and hourly breaks to use the restroom.  See Tr. 37–38; see also id. 75–76 (Plaintiff testifying

that she uses the restroom every 1.5 to 2 hours); Tr. 85 (vocational expert testifying that an

employee could take hourly breaks to the restroom).

The Court finds that the RFC satisfies Plaintiff's need for frequent restroom access.  While

Plaintiff argues that the ALJ did not account for unexpected accidents, the record indicates that

accidents are an issue for Plaintiff when she is away from home and not close to a restroom.  See

id. 76 (Plaintiff testifying that when she is home, "I'm usually by the bathroom, so no accident,

per se . . . .").  By considering Plaintiff's need for ready restroom access, as well as simple,

repetitive work, the ALJ properly accounted for Plaintiff's limitations in her RFC Determination.

### B. Assessment of Fibromyalgia

Second, Plaintiff argues that the ALJ did not adequately consider "the waxing and waning

of [Plaintiff's] fibromyalgia symptoms."  Pl.'s Br. at 19.  The Court again disagrees.

As an initial matter, the ALJ did adequately consider Plaintiff's reported fibromyalgia symptoms with events from August 2018 through November 2019.  The ALJ's analysis indicates that she reviewed reports of pain by Plaintiff from both fibromyalgia and from her left hip and that Plaintiff reports experiencing stiffness, numbness, and tingling.  Tr. 29–30.  Specifically, the ALJ noted the following: (1) In August 2018, Plaintiff reported that "fibromyalgia symptoms were better as her joint pain was not as intense"; (2) in December 2018, her "symptoms of fibromyalgia were unchanged in that she still had pain"; (3) in June 2019, Plaintiff's fibromyalgia was "acting up" in her neck, elbows, hands, knees, and ankles, (4) In July 2019, her fibromyalgia was "stable"; in August 2019, Plaintiff reported her symptoms "were at baseline"; and (5) In November 2019, Plaintiff reported "worsening" pain in both heels and calves with difficulty lifting her arms due to pain.  Tr. 30–34.  Indeed, this analysis shows that the ALJ considered the waxing and waning nature of Plaintiff's symptoms.

The ALJ also looked to objective evidence in the record, showing that Plaintiff suffered from fibromyalgia and hip issues.  See Campbell v. Berryhill, No. 17-1714, 2018 WL 3575255, at *7 (E.D. Pa. July 25, 2018) ("Even in fibromyalgia cases, the ALJ must compare the objective evidence and the subjective complaints and is permitted to reject plaintiff's subjective testimony so long as he provides a sufficient explanation for doing so.") (citations omitted).  The ALJ considered Plaintiff's entire medical record since the date of last insured.  This includes Plaintiff's (1) 2018 physical therapy for back pain, (2) records from orthopedic specialist Dr. Petrucelli for an examination, which showed, among other things, cystic changes of the superior, anterior acetabulum, (3) prescriptions by Dr. Petrucelli for Medrol Dosepak, and (4) notes from Dr. Petrucelli indicating Plaintiff was not a good candidate for surgery.  Id. 32.  In addition, the ALJ considered (5) treatment by internist Dr. Mullengada, who diagnosed Plaintiff with fibromyalgia

11

and left hip pain and treated her with Cymbalta, as well as (5) additional treatment recommendations from neurologist Dr. Tonzola.  Id. 32–33.  In addition to the medical reports, the ALJ considered Plaintiff's daily activities including that she was able to care for herself and perform certain chores such as laundry and light cleaning.  Id. 34.  Because Plaintiff demonstrated an ability to drive, the ALJ deduced that Plaintiff, for example, was able to use her upper extremities.  Id. 37 n. 2.

Although the ALJ did not make specific reference to SSR 12-2p, which explains how to evaluate claims involving fibromyalgia, the record indicates that the ALJ evaluated Plaintiff's record consistent with Social Security policy.

### C.  Opinion of Dr. Mullengada

Third, Plaintiff argues that the ALJ did not properly evaluate opinion evidence and failed to provide adequate reasoning for the weight assigned to treating physician opinions.  Under 20 C.F.R. § 404.1520c(b)(2), ALJs are required to explain how they "considered the supportability and consistency of an opinion."  See Tamya S. on behalf of L.S. v. Kijakazi, No. 20-10035, 2021 WL 5757400, at *7 (D.N.J. Dec. 3, 2021) (citing Buethe v. Comm'r of Soc. Sec., No. 20-552, 2021 WL 1966202, at *7 (E.D. Cal. May 17, 2021)).

Here, the ALJ properly summarizes Dr. Mullengada's opinions before concluding that they are "not consistent with the record as a whole and [are] not supported."  Tr. 37.  The ALJ goes on to explain that Dr. Mullengada is an internist, not a specialist, and that the doctor's findings are "inconsistent with her own treatment records, which consistently note that the claimant appeared with 'normal strength bilaterally, reflexes 2+ bilaterally and symmetrical, and gait normal,' and records from Atlantic Medical Group that also consistently report that the claimant presented with normal gait and station."  Id.  In addition, the ALJ noted that Plaintiff's daily living activities

12

support a finding that her symptoms were well controlled.  Id.  The Court therefore finds that the

ALJ provided adequate reasoning for the weight assigned to Dr. Mullengada's opinion.

### D.  Combination of Impairments

Finally, Plaintiff argues that the ALJ's finding that Plaintiff did not have an impairment or

combination of impairments that meets the criteria evaluation standard was conclusory.  According

to Plaintiff, the ALJ did not consider her impairments in combination even though evidence on the

record indicates they impacted one another.

Where the record indicates that the ALJ considered all the plaintiff's impairments in

combination, the Court find's this requirement satisfied.  See Gainey v. Astrue, No. 10-1912, 2011

WL 1560865, at *12 (D.N.J. Apr. 25, 2011) ("[T]he ALJ's detailed analysis of the individual

impairments and conclusion that Plaintiff did not have an impairment or combination of

impairments that met or equaled a listing is sufficient.  Indeed, where the ALJ has indicated that

the impairments have been considered in combination, there is no reason not to believe that the

ALJ did so.") (internal citations omitted).  Here, the ALJ indicated that she considered the

impairments in combination: "The claimant did not have an impairment or combination of

impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR

Part 404 . . . . No treating, examining, or non-examining medical source has mentioned findings

or rendered an opinion that the claimant's impairments, singly or in combination, medically

equaled the criteria of any listed impairment."  Tr. 26.  And Plaintiff otherwise fails to indicate to

this Court which of her combined medical conditions would satisfy the impairment standard.

The ALJ thus properly concluded that Plaintiff is not disabled as defined in the Social

Security Act and is therefore not entitled to benefits.

13

## IV.   CONCLUSION

For the foregoing reasons, the determination of the Commissioner is hereby **AFFIRMED**.

Date: December 10, 2024

**s/ Madeline Cox Arleo**
**Hon. Madeline Cox Arleo**
**UNITED STATES DISTRICT JUDGE**

14